## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

ELIZABETH ALDWORTH, individually and on behalf of all others similarly situated,

$\qquad$ Plaintiff,

v.

TD AMERITRADE, INC.

$\qquad$ Defendant.

Case No. 1:18-cv-243 (FJS/CFH

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff, ELIZABETH ALDWORTH ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned counsel hereby files this class action complaint against Defendant TD AMERITRADE, INC. ("Defendant" or "TD"). Based on personal knowledge as to herself, and on information and belief based on the investigation of counsel as to all other matters, Plaintiff alleges as follows:

### INTRODUCTION

1.    This action arises out of the Defendant's failure to render its website, TDAmeritrade.com, accessible to blind and visually impaired individuals, in violation of the Americans with Disabilities Act and New York law. Despite the fact that well-established guidelines for making websites accessible to blind and visually impaired individuals are readily available – and have been available for many years – Defendant has made no effort to ensure that its website, and the products and services offered through it, are accessible to its blind users.

2.      Defendant is an international brokerage firm with branch locations throughout the United States, including several in New York.  On its website, TDAmeritrade.com consumers can log into their accounts, enabling them to access their private account information and execute trades.  In addition, Defendant provides several web-based programs and proprietary trading software that are only available online through its website.

3.      Defendant's website is inaccessible to blind and visually impaired individuals because the various functions upon which blind users rely are so flawed as to be virtually useless.  Indeed, the mere process of signing up for an account online – a simple five-step process for a sighted user – is next to impossible, if not entirely impossible, for a blind person using standard web accessibility technology, such as a screen reader.

4.      Plaintiff, a woman who is blind, has attempted to access TDAmeritrade.com multiple times, including as recently as September 2017, but each attempt has failed due to the access barriers that plague Defendant's website.  Indeed, Plaintiff was unable to so much as create a user account – a requirement in order to meaningfully utilize the TD Ameritrade website – due to such access barriers.

5.      Plaintiff and other blind individuals have been denied access to the full and equal enjoyment of TDAmeritrade.com and TD Ameritrade branch locations as a result of these access barriers.

6.      This complaint seeks declaratory and injunctive relief to require Defendant to enact new policies and practices in order to ensure compliance with federal and state law and to include establish monitoring of such corrective measures. This complaint further seeks compensatory damages under state law to compensate Plaintiff and the other members of the Class for having been subjected to unlawful discrimination.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA"); and pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the putative class is a citizen of  a different state than the Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

8.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's pendant claims under the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and New York Civil Rights Law, N.Y. Civ. R. Law § 40 *et seq.*

9.      Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)-(c) in that a substantial part of the events giving rise to the action occurred and continue to occur in this district and/or the Defendant conducts substantial and regular business within this district.  Defendant operates for profit, 24 hours a day, seven days a week, an interactive website(s) to solicit, sell, and provide their services to the public living within this district.

10.     Defendant is an international corporation registered to do business in the state of New York. Defendant maintains ten branch offices in New York State, including several locations in the Southern District of New York.  Defendant has been and is committing the acts alleged herein in this district, has been and is violating the rights of consumers in this district, and has been and is causing injury to consumers in this district.

## PARTIES

11.     Plaintiff Elizabeth Aldworth is, and has been at all times material hereto, a resident of Ulster County, New York.

12.     Plaintiff is legally blind and thus a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, and the New York State Human Rights Law and Civil Rights Law.

13.     Plaintiff, like many blind individuals, uses a keyboard and screen reader software to utilize her computer and access the internet.  Plaintiff has been denied the full use and enjoyment of facilities, goods, and services of TD Ameritrade's website, www.tdameritrade.com, as well as the facilities, goods, and services of TD Ameritrade's various "brick and mortar" branch locations.  Most recently, Plaintiff attempted to access www.tdameritrade.com in September 2017, but was unable to do so due to the inaccessibility of the website.

14.     Defendant TD Ameritrade, Inc. is a Delaware corporation with its principal place of business located at 200 S. 108th Avenue, Omaha, Nebraska.  Defendant is a brokerage firm that provides services for individuals and institutions who are investing online, including offering an electronic trading platform for the purchase and sale of various securities, all of which are available through Defendant's website, www.tdameritrade.com.  Defendant owns and operates dozens of branch locations throughout the United States, including four locations in Manhattan.  The inaccessibility of www.tdameritrade.com has deterred Plaintiff from operating her brokerage accounts online through TD Ameritrade.

## FACTUAL ALLEGATIONS

*TD Ameritrade*

15.    Defendant is one of the largest discount brokerage firms in the United States, and the largest in terms of average client trades per day.  Defendant provides investing and trading services for seven million client accounts totaling more than $750 billion in assets.  Defendant's services fall into two categories:  investment services (retirement planning, rollover IRAs, and other long-term investment products); and trading services, specifically web-based trading platforms that range from catering to "any level investor" to "thinkorswim," a "professional-level trading platform for serious investors."[1]

16.    TD Ameritrade's website offers a wide range of information and services to its account holders and to the general public, including:

    a.  A branch office locator, allowing persons who wish to visit a TD Ameritrade branch to learn the location, hours of operation, and phone number of their nearest branch(es);

    b.  Information regarding Defendant's history, background, and various products and services; and

    c.  The ability to open a new account entirely online by providing personal information (name, address, etc.), a Social Security number or taxpayer identification number, a passport or visa number, and employer information.

17.    In addition, Defendant's website offers a vast array of services, information and products for TD Ameritrade account holders, including:

---

[1] *See* https://www.tdameritrade.com/tools-and-platforms.page (last visited January 23, 2018).

    a.   The ability to purchase and sell securities using TD Ameritrade's trading software;

    b.   Access to independent third-party research, educational resources, and planning tools to inform trading decisions;

    c.   Proprietary trading software, including a product called thinkorswim, a proprietary comprehensive trading and analytical platform that allows TD Ameritrade customers to find trading opportunities, analyze those opportunities and then execute trades based on this information;

    d.   Access to trading specialists employed by Defendant;

    e.   Access to account information, including account balances, transaction histories, and performance history; and

    f.   The ability to open and close additional accounts and/or to transfer funds from one account to another.

18.    Defendant has failed to make its website accessible to blind and visually impaired individuals, thereby denying such individuals access to and enjoyment of their various web-based products and services.

***Websites Can be, and Often are, Made Accessible to Blind and Visually Impaired Individuals***

19.    Over the last two decades, a steadily increasing amount of social, economic, and political activity in the United States, and around the world, has moved online. Today, millions of Americans – including millions of blind Americans – use the Internet to conduct business, shop, and access information.

20.    In particular, more and more American consumers are using the internet to do some or all of their banking activities, including opening and closing accounts, transferring

assets, paying bills, or trading in stocks and other securities. Indeed, according to a national survey conducted by the Pew Research Center announced on August 7, 2013, more than half – 51% – of all U.S. adults bank online. Sixty-one percent of all internet users bank online. This marks an increase from 2010, when 46% of adults said they bank online.[2]

21.    Blind people access websites by utilizing screen-reading software which vocalizes (or translates to a specialized Braille display) visual information on a computer screen. Some blind individuals with residual vision use screen magnifiers, which magnify the images on a computer screen to a size that is readable by the visually impaired individual. However, for many blind or visually impaired individuals, the only mechanism by which they can access the Internet is screen access vocalization software (often called a "screen reader"). Screen readers use a wide variety of keyboard commands to carry out tasks.

22.    Websites must be designed with certain particular features in order to be compatible with keyboard controls and screen readers, and thus accessible to blind people. There are well-established guidelines for making websites so accessible. These guidelines have been in place for at least several years and have been followed successfully by hundreds, if not thousands, of other large business entities, including several of Defendant's direct competitors.

23.    The United States Access Board, a federal agency tasked with promoting equality for people with disabilities, has promulgated website accessibility standards under Section 508 of the Rehabilitation Act.[3] These guidelines incorporate by reference the "Web Content Accessibility Guidelines (WCAG) 2.0" published by the World Wide Web Consortium (W3C).[4]

---

[2] *See* Pew Research Center, "51% of U.S. Adults Bank Online," *available at:* http://www.pewinternet.org/2013/08/07/51-of-u-s-adults-bank-online/ (last visited January 23, 2018).

[3] *See* 82 F.R. 5790; 36 C.F.R. 1194.

[4] *See* "Web Content Accessibility Guidelines (WCAG) 2.0," *available at* https://www.w3.org/TR/WCAG20/.

These guidelines are available on the Internet, free of charge, so that a business designing a website can easily access them.

24.    The WCAG 2.0 Guidelines recommend several basic components, including:

a.    Providing a text alternative (called "alt text") to all non-text content (i.e., images or graphics) that appears on the website (thus enabling such content to be picked up by screen readers);

b.    Creating content that can be presented in different ways (*e.g.*, a simpler layout) without losing information or structure;

c.    Making all functionality of the website available from a keyboard, so the user does not have to utilize a mouse;

d.    Providing users enough time to read and use content;

e.    Adding headings so blind people can more easily navigate the website; and

f.    Ensuring all text content is readable and understandable by screen readers.

***Defendant's Website and Web-Based Services and Products are Inaccessible to Blind and Visually Impaired Individuals***

25.    Defendant's website, TDAmeritrade.com, contains access barriers that prevent free and full use by Plaintiff of Defendant's website and thus of all of Defendant's services. Indeed, access barriers prevent Plaintiff and other members of the Class from so much as opening an account on TDAmeritrade.com because the website is replete with problems that prevent a blind individual using a screen reader from inputting information into text fields, making selections, or receiving all of the information necessary to open an account (information that is readily available to a sighted user).

26.    Although TD Ameritrade touts its "easy" process, by which a user can "[o]pen an account in five simple steps," the process is anything but "simple" for a blind individual – indeed, it is virtually impossible.

27.    For example, a user must enter certain information, such as his or her first and last name, mailing address, and email address in order to begin the process of setting up an account online at TDAmeritrade.com.  For a blind individual using a screen reader, this process is extremely complicated due to a number of barriers to access, including but not limited to the following:

- Drop-down menus (for fields such as "State of Residence" or "Country of Residence") do not function correctly, so that options are not read by the screen reader;

- When a user attempts to type into an edit field (such as the "First Name" field), a malfunction with the website causes the screen reader to return to the top of the page, forcing the user to navigate back to the field to continue typing;

- When utilizing the Chrome web browser, a blind individual using a screen reader has no way of accessing the crucial information regarding a promotional offer – information pertaining to minimum account values, penalties, and other key terms and conditions;[5]

- TDAmeritrade.com employs non-standard controls,[6] some of which require the user to read supporting text in order to understand how to operate the control;

- Generally, if a user inadvertently fails to complete a required field or provides incorrect information in a field, the user will receive an error message, informing the user of his or her error.  However, if a blind user fails to complete a field or provides incorrect information, the submitted form is returned to him or her but no error messages are given, forcing the blind or visually impaired individual to guess at what the problem might be and attempt to correct it; and

---

[5] This information does appear if the user utilizes the FireFox browser instead; however, the text is displaced on the page, forcing the user to search the page for it, a task which is difficult or impossible.

[6] Standard controls are functions such as drop-down menus, radio buttons, and check boxes.  The TDAmeritrade website uses these functions, but also employs "non-standard controls" such as tab controls.  These non-standard controls are particularly difficult or impossible for blind users to navigate using a screen reader.

- Once a user has submitted all of the requisite information, he or she is presented with three documents setting forth the various "fine print" terms and conditions. The user must click a button indicating that he or she agrees to be bound by these terms and conditions in order to create his or her account.  For a blind user, however, reading these materials in full is impossible.  The documents are not apparent to the blind or visually impaired user, and indeed, the material is presented in such a way as to imply that the user must agree to the documents without having an opportunity to read them.  Indeed, these crucial documents are presented as three unlabeled links that provide no indication as to their contents. Clicking on the links allows the user to download three PDF files which contain various terms and conditions, however, one such file (the Business Continuity Plan Statement) is effectively blank and cannot be read with a screen reader.

28.    Without an account, it is impossible for a TD Ameritrade customer to engage in any of Defendants' products or services, such as executing trades, utilizing proprietary software, or opening additional new accounts.  Thus, because it is impossible for Plaintiff and other blind or visually impaired customers to open an account at TDAmeritrade.com, Plaintiff and the other Class members are *de facto* barred from utilizing TDAmeritrade.com in any meaningful way.

29.    Due to TDAmeritrade.com's inaccessibility, Plaintiff and other blind customers must exert additional time, energy, and/or money to execute trades or otherwise manage their TD Ameritrade accounts over the phone or by visiting a TD Ameritrade branch office (of which there are only ten in the state of New York).  Some blind users may require a driver to transport them to the nearest branch (for example, the closest TD Ameritrade branch location to Plaintiff's home is nearly 80 miles away).

30.    Further, many of Defendant's services are entirely web-based – for example, its proprietary trading software – and thus Plaintiff and other blind customers are completely barred from accessing these services due to the access barriers on TDAmeritrade.com.  Defendant does not provide an alternative to such completely inaccessible services.

***Plaintiff's Futile Attempts to Access Defendant's Website***

31.    Plaintiff has made numerous attempts to access Defendant's website over the last decade. Her most recent attempt to access TDAmeritrade.com was made in or about September 2017. Each attempt to access the TD Ameritrade's website has failed because of the access barriers on the website.

32.    Plaintiff's first attempts to access Defendant's website took place approximately 10 years ago, in or about 2007. At that time, Plaintiff held a number of brokerage accounts with another broker that maintained an accessible website, but that broker merged into Defendant. When Plaintiff attempted to access her accounts on TDAmeritrade.com after the merger she encountered access barriers.

33.    At that time, Plaintiff alerted Defendant to this issue, but Defendant failed to take the appropriate action to render TDAmeritrade.com accessible to Plaintiff and other blind users.

34.    Because she was unable to use the Defendant's website, Plaintiff closed her accounts with Defendant and moved her assets to Scottrade in January 2008.

35.    Plaintiff was able to utilize Scottrade's website. Plaintiff currently maintains a ROTH account at Scottrade.

36.    Unfortunately for Plaintiff and the other Class members, on September 18, 2017 Scottrade announced that it had merged with Defendant, and that all Scottrade accounts will be transitioned to TD Ameritrade in early 2018.

37.    In an effort to prepare for this transition, Plaintiff attempted to access TDAmeritrade.com during this time, but was unable to do so due to access barriers, including those described herein.

38.    Plaintiff again informed Defendant that she was unable to access TDAmeritrade.com due to barriers, and Defendant once again took no steps to address these

barriers, and instead continued to deny to Plaintiff and other Class members full access to and enjoyment of the services offered by Defendant and by Defendant's website.

39.    Thus, Plaintiff has actual knowledge of the fact that Defendant's website, TDAmeritrade.com, contains access barriers resulting in a website that it wholly inaccessible to blind and visually impaired individuals.

40.    These barriers to access have denied Plaintiff and the other Class members full and equal access to, and enjoyment of, the goods, benefits and services of TDAmeritrade.com and TD Ameritrade branch locations.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this class action under Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and (b)(3) individually and on behalf of the following class and sub-class of similarly situated persons:

> **Nationwide Class:**  All legally blind or visually impaired individuals in the United States who have attempted to access TDAmeritrade.com and/or any component, function, product, or service offered therein, and as a result have been denied access to the enjoyment of goods and services offered on TDAmeritrade.com and in TD Ameritrade branch locations, during the relevant statutory period (the "Class").

> **New York Sub-Class:**  All legally blind or visually impaired individuals residing in the State of New York who have attempted to access TDAmeritrade.com and/or any component, function, product, or service offered therein, and as a result have been denied access to the enjoyment of goods and services offered on TDAmeritrade.com and in TD Ameritrade branch locations, during the relevant statutory period (the "New York Sub-Class").

42.    **Numerosity (Fed. R. Civ. P. 23(a)(1)):**  The Class members are so numerous as to make it impractical to bring them all before this Court and the disposition of their claims in a class action is a benefit to the parties and to the Court.  Upon information and belief, there are millions of blind or visually impaired individuals currently residing in the United States.

Moreover, thousands of people develop in the United States develop blindness or visual impairment each year.

43.     **Commonality and Predominance (Fed. R. Civ. P. Rule 23(a)(2) and 23(b)(3)):** There are common questions of law and fact affecting the rights of each Class member, and these common questions predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation, the following:

a. Whether Defendant's website, TDAmeritrade.com, is a "public accommodation" under the ADA;

b. Whether TDAmeritrade.com is a "place or provider of public accommodation" under the laws of New York;

c. Whether Defendant, through its website, denies the full and equal enjoyment of its goods, services, products, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

d. Whether Defendant, through its website, denies the full and equal enjoyment of its goods, services, products, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of New York state law.

44.     **Typicality (Fed. R. Civ. P. 23(a)(3)):**     The claims asserted by Plaintiff individually are typical of the claims of the Class members, and arise from the same course of conduct by Defendant.  The relief Plaintiff seeks is typical of the relief sought for the absent Class members and do not conflict with the interests of any other members of the Classes.

45.     **Adequate Representation (Fed. R. Civ. P. 23(a)(4)):**  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in prosecuting such class action litigation.  Plaintiff and her counsel are

committed to vigorously prosecuting this action and have the financial resources to do so. Neither Plaintiff nor her counsel have interests adverse to those of the Class.

46.    **Superiority (Fed. R. Civ. P. 23(b)(2) and 23(b)(3)):**  This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class as a whole.  Alternatively, this action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

47.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation.  Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public, of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

48.    Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

**COUNT I**
**VIOLATION OF TITLE III OF THE  AMERICANS WITH DISABILITIES ACT,**
**42 U.S.C. § 12181, *et seq.***
**(On behalf of Plaintiff and the Nationwide Class)**

49.    Plaintiff repeats and realleges paragraphs 1 through 48 as if set forth fully herein.

50.     Section 302(a) of Title III of the Americans with Disabilities Act of 1990, 42

U.S.C. § 12182(a) provides:

> No individual shall be discriminated against on the basis of disability in the full
> and equal enjoyment of the goods, services, facilities, privileges, advantages, or
> accommodations of any place of public accommodation by any person who owns,
> leases (or leases to), or operates a place of public accommodation.

51.     Defendant's branch locations located in New York State, as well as Defendant's

website, TDAmeritrade.com, are "places of public accommodation" pursuant to 42 U.S.C. §

12182(a).  Defendant's website is also a "service, privilege, or advantage" of Defendant's branch

locations.

52.     The ADA defines "disability" as, *inter alia*, "a physical or mental impairment that

substantially limits one or more major life activities of such individual."  "Major life activities"

are defined to include, *inter alia*, "seeing."  *See* 42 U.S.C. § 12102(1)(A), (2)(A).  Thus,

blindness or vision loss constitutes a disability under the ADA.

53.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to

deny individuals with disabilities or a class of individuals with disabilities the opportunity to

participate in or benefit from the goods, services, facilities, privileges, advantages, or

accommodations of an entity.  *See* 42 U.S.C. § 12182(b)(1)(A)(I).

54.     Under Section 302(b)(2) of Title III of the ADA, it is unlawful discrimination to

deny individuals with disabilities or a class of individuals with disabilities the opportunity to

participate in or benefit from the goods, services, facilities, privileges, advantages, or

accommodation, which is equal to the opportunities afforded to other individuals. *See* 42 U.S.C.

§ 12182(b)(1)(A)(II).

55.     Pursuant to Section 302(b)(2) of Title III of the ADA, unlawful discrimination

includes, but is not limited to:

(ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; and

(iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden

56.    Defendant has discriminated and continues to discriminate against Plaintiff and the other Class members by denying them access to, and full enjoyment of, the goods, services, and privileges available at its branch locations and its website, TDAmeritrade.com.  Indeed, many products and services offered by Defendant are available exclusively at TDAmeritrade.com, and thus are wholly inaccessible to Plaintiff and the other Class members.

57.    As evidence of this discrimination, it is virtually impossible for a blind individual utilizing a screen reader – as most blind Internet users do – to complete the steps necessary to create and open an account on TDAmeritrade.com due to problems with the website, including nonfunctional drop-down menus, improperly functioning edit fields, and the fact that information presented to sighted users is not adequately presented to blind users.

58.    The United States Access Board promulgated website accessibility standards which incorporate by reference the "Web Content Accessibility Guidelines 2.0." These guidelines set forth clear measures that individuals and organizations can implement to ensure that their websites are fully accessible by blind individuals.  These guidelines are readily available on the Internet, free of charge, so that a business designing a website can easily access them.

59.    Incorporating these guidelines would neither alter the nature of Defendant's business nor result in an undue burden to Defendant.  Many other businesses, including other multi-national brokerage firms and banks, have incorporated these guidelines into the development of their websites, and those websites are fully accessible to blind and visually impaired individuals.

60.    The acts alleged herein constitute violations of the Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, and the regulations promulgated thereunder.  Patrons of TD Ameritrade who are blind have been denied full and equal access to TDAmeritrade.com, have not been provided services that are provided to non-blind patrons, and/or have been provided services that are inferior to the services provided to non-blind patrons.

61.    Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  Defendant's violations of the ADA are ongoing.

62.    Without injunctive relief, Defendant will continue to discriminate against Plaintiff and the other Class members by preventing them from the full and equal access and enjoyment of Defendant's goods and services, and thus Plaintiff and the other Class members will continue to suffer irreparable harm.

63.    The actions of Defendant were and are in violation of Title III of the ADA and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

64.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

### COUNT II

**VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW**
**(N.Y. Exec. Law Art. 15, § 292 *et seq.*)**
**(On behalf of Plaintiff and the New York Sub-Class)**

65.    Plaintiff repeats and realleges paragraphs 1 through 48 as if set forth fully herein.

66.     Plaintiff brings this claim on behalf of the New York Sub-Class.

67.     N.Y. Exec. Law § 296(2)(a) provides that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof…."

68.     TD Ameritrade branch locations in New York State and TDAmeritrade.com are places of public accommodation within the definition of N.Y. Exec. Law § 292(9).  Further, TDAmeritrade.com is a service, privilege or advantage of TD Ameritrade.

69.     Defendant is a "person" as defined by N.Y. Exec. Law § 292(1).

70.     Defendant has violated and is violating N.Y. Exec. Law § 296(2)(a).  Defendant has denied and continues to deny Plaintiff and other New York Sub-Class members access to the full accommodations, advantages, and privileges of TD Ameritrade branch locations and TDAmeritrade.com by refusing to take measures to make TDAmeritrade.com accessible to blind and visually impaired individuals.

71.     N.Y. Exec. Law § 296(2)(c)(I) provides that unlawful discriminatory practice includes, *inter alia*, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges or accommodations."

72.    In addition, N.Y. Exec. Law § 296(2)(c)(II) provides that unlawful discriminatory practice also includes "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

73.    The United States Access Board promulgated website accessibility standards which incorporate by reference the "Web Content Accessibility Guidelines 2.0." These guidelines set forth clear measures that individuals and organizations can implement to ensure that their websites are fully accessible by blind individuals.  Such guidelines are readily available on the Internet, free of charge, so that a business designing a website can easily access them.

74.    Incorporating these guidelines would neither alter the nature of Defendant's business nor result in an undue burden to Defendant.  Many other businesses, including other multi-national brokerage firms and banks, have incorporated these guidelines into the development of their websites, and those websites are fully accessible to blind and visually impaired individuals.

75.    Defendant's actions constitute willful intentional discrimination against the Class on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2).  Plaintiff notified Defendant of its failure to maintain a website that was fully accessible to blind and visually impaired individuals approximately ten years ago, and then again in or about September 2017.  Defendant has refused take the measures necessary to ensure that its website is accessible despite this knowledge.

76.    Defendant has refused to take any prompt and equitable step to remedy its discriminatory conduct.  Defendant's violation of New York State Human Rights Law is ongoing in nature.  Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and members of the New York Sub-Class will continue to suffer irreparable harm.

77.    Defendants' actions were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

78.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exec. Law § 297(9) for each and every offense.

79.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

<u>COUNT III</u>
**VIOLATION OF NEW YORK STATE CIVIL RIGHTS LAW**
**(N.Y. Civ. R. Law Art. 14, § 40 *et seq.*)**
**(On behalf of Plaintiff and the New York Sub-Class)**

80.    Plaintiff repeats and realleges paragraphs 1 through 48 as if set forth fully herein.

81.    Plaintiff brings this claim on behalf of the New York Sub-Class.

82.    N.Y. Civ. R. Law § 40 provides that "all  persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any such place shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof…"

83.    N.Y. Civ. R. Law § 40-c(2) provides that "[n]o person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability….be subjected to

any discrimination in his or her civil rights….by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state."

84.    TD Ameritrade branch locations and TDAmeritrade.com are places of public accommodation as defined by N.Y Civ. R. Law § 40.

85.    TDAmeritrade.com is also a service, privilege, or advantage of TD Ameritrade branch locations.

86.    Defendant is subject to New York Civil Rights law because it owns and operates TD Ameritrade branch locations in New York, and because it owns and operates TDAmeritrade.com.  Defendant is a person as defined by N.Y. Civ. R. Law § 40-c(2).

87.    Defendant is violating N.Y. Civ. R. Law § 40-c(2) by refusing to remove the access barriers that currently render TDAmeritrade.com and the products and services offered on TDAmeritrade.com inaccessible to Plaintiff and the New York Sub-Class.  This inaccessibility denies blind users, including Plaintiff and the New York Sub-Class, full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

88.    The United States Access Board promulgated website accessibility standards which incorporate by reference the "Web Content Accessibility Guidelines 2.0." These guidelines set forth clear measures that individuals and organizations can implement to ensure that their websites are fully accessible by blind individuals.  These guidelines are readily available on the Internet, free of charge, so that a business designing a website can easily access them.

89.    Incorporating these guidelines would neither alter the nature of Defendant's business nor result in an undue burden to Defendant.  Many other businesses, including other multi-national brokerage firms and banks, have incorporated these guidelines into the

development of their websites, and those websites are fully accessible to blind and visually impaired individuals.

90.     N.Y. Civ. R. Law §§ 40-d and 41 provide that any person who violates the New York Civil Rights Law "for each and every violation thereof [is] liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby…."

91.     Defendant has refused to take any prompt and equitable step to remedy its discriminatory conduct.  Defendant's violation of New York State Civil Rights Law is ongoing in nature.  Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and members of the New York Sub-Class will continue to suffer irreparable harm.

92.     Defendants' actions were and are in violation of New York State Civil Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

93.     Plaintiff is also entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Exec. Law § 40 *et seq.* for each and every offense.

94.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other Class members, respectfully requests that the Court enter an Order:

a.     Certifying the proposed Class and Sub-Class, designating Plaintiff as the named representative of the Class and Sub-Class, designating the undersigned as Class Counsel, and

making such further orders for the protection of Class members as the Court deems appropriate under Fed. R. Civ. P. 23;

b.      Declaring that Defendant owns, maintains and/or operates its website, TDAmeritrade.com, in a manner which discriminates against blind and visually impaired individuals and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, the New York Human Rights Law, N.Y. Exec. Law § 292 *et seq.*, and the New York Civil Rights Law, N.Y. Civ. R. L. § 40 *et seq.*;

c.      Injunctive relief, including but not limited to:

i.      Enjoining Defendant from further violations of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, the New York Human Rights Law, N.Y. Exec. Law § 292 *et seq.*, and the New York Civil Rights Law, N.Y. Civ. R. L. § 40 *et seq.*; and

ii.     Requiring Defendant to immediately take any and all action necessary to render its website and all of its web-based services and functions fully accessible to blind and visually impaired individuals, including but not limited to ensuring that blind users can open an account on TDAmeritrade.com utilizing screen reader software.

d.      Awarding compensatory damages in an amount to be determined at trial, including all applicable statutory damages and fines, to Plaintiff and the proposed Sub-Class for violations of the New York Humans Rights Law and New York Civil Rights Law;

e.      Awarding Plaintiff's reasonable attorneys' fees, statutory damages, expenses, and costs of suit as provided by state and federal law;

f.      Awarding pre- and post-judgment interest to the extent permitted by law;

g.      Providing leave to amend this Complaint as necessary; and

h.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial as to all issues triable by a

jury.

Date: February 26, 2018

                                        Respectfully submitted,

                              By: /s/ S. David Devaprasad
                                  S. David Devaprasad (Bar Roll # 302024)
                                  **DEVAPRASAD pllc**
                                  119 Washington Avenue
                                  Albany, New York 12210
                                  Tel: (518) 496-9238
                                  sdd@devalaw.com

                                  **WOLF HALDENSTEIN ADLER
                                  FREEMAN & HERZ LLP**
                                  Jeffrey G. Smith (pro hac vice application to
                                  be filed)
                                  Lydia Keaney Reynolds (pro hac vice
                                  application to be filed)
                                  270 Madison Avenue
                                  New York, New York 10016
                                  Tel: (212) 545-4600
                                  Fax: (212) 686-0114
                                  smith@whafh.com
                                  reynolds@whafh.com

                                  *Counsel for Plaintiff*

/796976